UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| NORBERTO PAREDES, individually and on behalf of all others similarly situated,<br><br>v.<br><br>CNC OILFIELD SERVICES, LLC | Case No. 5:20-cv-00600<br>FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Norberto Paredes brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA).

2. CNC Oilfield Services, LLC offers oilfield support operations, including transportation of fluids and materials to and from drill sites.

3. Paredes was a CNC driver who performed such work.

4. CNC employs many drivers like Paredes.

5. Paredes, like other CNC drivers, was paid based on the loads he hauled without regard to the number of hours he worked.

6. Paredes regularly worked overtime for CNC.

7. But CNC did not pay Paredes overtime for the hours he worked in excess of 40 in a workweek.

8. This collective action seeks to recover the unpaid wages and other damages owed to Paredes and other workers like him at CNC.

### JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District and Division.

11. Paredes performed work for CNC in this District and Division.

## PARTIES

12. Paredes was, at all relevant times, an employee of CNC.

13. Paredes worked for CNC from August 2019 until March 2020.

14. Paredes's written consent is attached as Exhibit A.

15. The class of similarly situated employees or potential class members sought to be certified is defined as:

> **All current and former drivers for CNC Oilfield Services, LLC who were not paid overtime, at any point in the past three years.**

16. CNC is a Louisiana limited liability company.

17. CNC conducts business in a systematic and continuous manner throughout Texas, including this District and Division.

18. CNC may be served by service upon its registered agent, **CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201**, or by any other method authorized by law.

## COVERAGE UNDER THE FLSA

19. CNC was an employer of Paredes within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. CNC was an employer of the Putative Class Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

21. CNC was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

22. During at least the last three years, CNC has had gross annual sales in excess of $500,000.

23. CNC was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

24. CNC employs many workers, including Paredes, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

25. The goods and materials handled, sold, or otherwise worked on by Paredes, and other CNC employees and that have been moved in interstate commerce include, but are not limited to, frac tanks, fluids, and other oilfield equipment and supplies.

## FACTS

26. CNC provides a variety of support services for oilfield operations.

27. Among CNC's oilfield support services are its vacuum truck and trucking services.

28. Paredes was employed as a driver providing hauling services to CNC's clients.

29. Often, Paredes drove a vacuum truck to and from a wellsite, and then to disposal.

30. Paredes would haul water, oil-based mud, salt, and crude oil.

31. None of the items Paredes would transport are hazardous.

32. Paredes's truck did not have a hazard placard.

33. CNC paid Paredes on a per load basis.

34. CNC paid Paredes a percentage of every load that was hauled.

35. CNC did not pay Paredes a salary.

36. CNC also paid Paredes additional compensation, including non-discretionary bonuses.

37. Paredes normally worked more than 40 hours in a week.

38. Paredes usually worked more than 12 hours in each shift, and he regularly worked 14 or more hours each day.

39. Paredes reported the hours he worked to CNC on a regular basis.

40. Paredes's hours are reflected in CNC's records.

41. Paredes was scheduled to work a 12-hour shift.

42. CNC did not pay Paredes or the Potential Class Members for all of their work time.

43. CNC did not pay Paredes or the Potential Class Members overtime for hours worked over 40 in a workweek.

44. Of course, then, when he worked more than 40 hours in a week, CNC did not pay Paredes at 1.5x his regular rate for his overtime hours.

45. Paredes drove in about a 200 mile-radius in south Texas.

46. Paredes did not drive for CNC outside of south Texas.

47. As part of his driving for CNC, Paredes did not go to any other states.

48. CNC employed a specific set of drivers to bring trucks from Louisiana to Texas.

49. Paredes was not one of the drivers who was employed to bring trucks from Louisiana to Texas.

50. The other drivers, like Paredes, who performed work driving to and from drill sites, did not drive outside of south Texas.

51. None of these drivers were asked to travel outside of Texas.

52. None of these drivers were asked to travel outside of south Texas.

53. CNC was well aware of the overtime requirements of the FLSA.

54. CNC knew Paredes was working more than 40 hours per week.

55. CNC knew the other drivers, like Paredes, who performed work driving to and from drill sites, were working more than 40 hours per week.

56. CNC knew Paredes did not drive outside of Texas.

57. CNC knew the other drivers, like Paredes, who performed work driving to and from drill sites, were not driving outside of Texas.

58. CNC knew Paredes was not one in the group of drivers who drove across state lines.

59. CNC knew the other drivers, like Paredes, who performed work driving to and from drill sites, were not in the group of drivers who drove across state lines.

60. CNC nonetheless failed to pay proper overtime to certain employees, such as Paredes.

61. These employees performed work that is primarily manual labor in nature.

62. Under the FLSA, the work performed by these employees is non-exempt manual labor.

63. Paredes and the Putative Class Members were not allowed to vary from the job duties that were predetermined for them.

64. Truly, these workers have little or no discretion in how to do their job, or the jobs of others they work with.

65. Even though Paredes and the Putative Class Members perform very routine, technical, and manual labor job duties, CNC uniformly failed to pay overtime to these workers.

66. CNC knew, or showed reckless disregard for whether, its policy of not calculating and paying overtime at the full, regular hourly rate violated the FLSA.

67. CNC's failure to pay overtime to these workers was, and is, a willful violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

68. Paredes incorporates all other allegations.

69. The illegal pay practices CNC imposed on Paredes was likewise imposed on the Putative Class Members.

70. CNC employs many other hourly workers who worked over 40 hours per week and were subject to CNC's same pattern, practice, and policy of failing to pay overtime at 1.5x the workers' regular rates of pay.

71. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

72. Based on his experience and tenure with CNC, Paredes is aware that CNC's illegal practices were imposed on the Putative Class Members.

73. These workers were similarly situated within the meaning of the FLSA.

74. CNC's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent

on the personal circumstances of the Putative Class Members.

### CAUSE OF ACTION–OVERTIME VIOLATIONS OF THE FLSA

75. Paredes incorporates all other allegations.

76. By failing to pay Paredes and the Putative Class Members overtime at 1.5 times their regular rates, CNC violated the FLSA. 29 U.S.C. § 207(a).

77. CNC owes Paredes and the Putative Class Members the difference between the rate actually paid and the proper overtime rate.

78. Because CNC knew, or showed reckless disregard for whether, its pay practices violated the FLSA, CNC owes these wages for at least the past three years.

79. CNC also owes Paredes and the Putative Class Members an amount equal to the unpaid overtime wages as liquidated damages.

80. Paredes and the Putative Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

### RELIEF SOUGHT

81. Wherefore, Paredes prays for judgment against CNC as follows:

   (a) For an order certifying this case as a collective action for the purposes of the FLSA claims;

   (b) For an order finding CNC liable for violations of state and federal wage laws with respect to Paredes and all Putative Class Members covered by this case;

   (c) For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Paredes and all Putative Class Members covered by this case;

   (d) For a judgment awarding Paredes and all Putative Class Members covered by this case their costs of this action;

   (e) For a judgment awarding Paredes and all Putative Class Members covered by this case their attorneys' fees;

(f)  For a judgment awarding Paredes and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(g)  For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*
By: _____
**Matthew S. Parmet**
Texas Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, Texas 77056
phone  713 999 5228
fax      713 999 1187
matt@parmet.law

**Attorneys for Plaintiff**