UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| NORBERTO PAREDES and DANIEL PERALES, each individually and on behalf of all others similarly situated,<br><br>v.<br><br>CNC OILFIELD SERVICES, LLC | Case No. 5:20-cv-00600-FB<br>FLSA Collective Action<br><br>Judge Fred Biery<br><br>Magistrate Judge Richard B. Farrer |

# FIRST AMENDED COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Norberto Paredes and Daniel Perales bring this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA).

2. CNC Oilfield Services, LLC offers oilfield support operations, including transportation of fluids and materials to and from drill sites.

3. Paredes and Perales were CNC drivers who performed such work.

4. CNC employs many drivers like Paredes and Perales.

5. Paredes and Perales, like other CNC drivers, were paid based on the loads they hauled without regard to the number of hours they worked.

6. Paredes and Perales regularly worked overtime for CNC.

7. But CNC did not pay Paredes or Perales overtime for the hours they worked as drivers in excess of 40 in a workweek.

8. Perales also performed work for CNC cleaning tanks, which was separate from his duties as a driver.

9. When he was cleaning tanks, CNC paid Perales on an hourly basis.

10.     But even when working on an hourly basis, CNC did not pay Perales and other hourly workers overtime as required by federal law.

11.     Instead, CNC paid these workers the same hourly rate for all hours worked, including those in excess of 40 in a workweek.

12.     This collective action seeks to recover the unpaid wages and other damages owed to Paredes, Perales, and other workers like them at CNC.

## JURISDICTION AND VENUE

13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District and Division.

15.     Paredes and Perales performed work for CNC in this District and Division.

## PARTIES

16.     Paredes was, at all relevant times, an employee of CNC.

17.     Paredes worked for CNC from August 2019 until March 2020.

18.     Paredes's written consent is attached as Exhibit A.

19.     Perales was, at all relevant times, an employee of CNC.

20.     Perales worked for CNC from September 2019 until March 2020.

21.     Perales's written consent is attached as Exhibit B.

22.     The first class of similarly situated employees or potential class members sought to be certified (the "Driver Class"), regarding which Paredes and Perales are representative, is defined as:

> All current and former drivers for CNC Oilfield Services, LLC who were not paid overtime, at any point in the past three years.

23. The second class of similarly situated employees or potential class members sought to be certified (the "Straight Time Class"), regarding which Perales is representative, is defined as:

> All hourly employees of CNC Oilfield Services, LLC who were, at any point in the past three years, paid "straight time for overtime."

24. Together, the members of the Driver Class and the Straight Time Class are referred to as the "Putative Class Members."

25. CNC is a Louisiana limited liability company.

26. CNC conducts business in a systematic and continuous manner throughout Texas, including this District and Division.

27. CNC may be served by service upon its registered agent, **CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201**, or by any other method authorized by law.

### COVERAGE UNDER THE FLSA

28. CNC was an employer of Paredes and Perales within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

29. CNC was an employer of the Putative Class Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30. CNC was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

31. During at least the last three years, CNC has had gross annual sales in excess of $500,000.

32. CNC was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

33. CNC employs many workers, including Paredes and Perales, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

34. The goods and materials handled, sold, or otherwise worked on by Paredes, and other CNC employees and that have been moved in interstate commerce include, but are not limited to, tanks, fluids, motor vehicles, and other oilfield equipment and supplies.

## FACTS

35. CNC provides a variety of support services for oilfield operations.

36. Among CNC's oilfield support services are its vacuum truck and trucking services.

37. Paredes and Perales were employed as a driver providing services to CNC's clients.

38. Paredes and Perales drove a vacuum truck to and from a wellsite.

39. Paredes and Perales would transport saltwater and freshwater to and from the wellsite.

40. For example, Paredes and Perales would often transport saltwater from one wellsite to another, or to disposal.

41. None of the items Paredes or Perales would transport are hazardous.

42. Neither Paredes nor Perales's trucks had a hazard placard.

43. CNC paid Paredes on a per load basis.

44. When working as a driver, CNC paid Perales on a per load basis.

45. CNC paid Paredes a percentage of every load that was hauled.

46. When working as a driver, CNC paid Perales a percentage of every load that was hauled.

47. When working as a tank cleaner, CNC paid Perales by the hour.

48. When CNC paid Perales on an hourly basis, he was paid the same rate for all hours worked.

49. Even if Perales worked more than 40 hours in a week, all of his hourly work was paid at the same rate.

50. Thus, rather than receiving time-and-a-half as required by the FLSA, Perales only received "straight-time" pay for overtime hours worked that were paid by the hour.

51. This "straight-time-for-overtime" payment scheme violates the FLSA.

52. CNC did not pay Paredes, nor Perales, a salary.

53. CNC also paid Paredes and Perales additional compensation, including non-discretionary bonuses.

54. Paredes and Perales each normally worked more than 40 hours in a week.

55. Paredes and Perales each usually worked more than 12 hours in each shift, and they each regularly worked 14 or more hours each day.

56. Paredes and Perales reported the hours they worked to CNC on a regular basis.

57. Paredes and Perales's hours are reflected in CNC's records.

58. Paredes and Perales were scheduled to work a 12-hour shift.

59. CNC did not pay Paredes, Perales, or the Driver Class Members for all of their work time.

60. CNC did not pay Paredes, Perales, or the Driver Class Members overtime for hours worked over 40 in a workweek.

61. Of course, then, when they worked more than 40 hours in a week, CNC did not pay Paredes or Perales at 1.5x their regular rate for his overtime hours.

62. Paredes and Perales worked out of CNC's facility in Dilley, Texas.

63. Paredes and Perales drove in about a 200 mile-radius in south Texas.

64. Neither Paredes nor Perales drove for CNC outside of south Texas.

65. As part of their driving for CNC, neither Paredes nor Perales went to any other states.

66. CNC employed a specific set of drivers to bring trucks from Louisiana to Texas.

67. Neither Paredes nor Perales were one of the drivers who was employed to bring trucks from Louisiana to Texas.

68. The other drivers, like Paredes and Perales, who performed work driving to and from drill sites, did not drive out of state.

69. None of these drivers were asked to travel out of state.

70. None of the vacuum truck drivers in Dilley were asked to travel outside of south Texas.

71. CNC was well aware of the overtime requirements of the FLSA.

72. CNC knew Paredes and Perales were working more than 40 hours per week.

73. CNC knew the other drivers, like Paredes and Perales, who performed work driving to and from drill sites, were working more than 40 hours per week.

74. CNC knew Paredes and Perales did not drive outside of Texas.

75. CNC knew the other vacuum truck drivers, like Paredes and Perales, who performed work driving to and from drill sites, were not driving out of state.

76. CNC knew Paredes and Perales were not one in the group of drivers who drove across state lines.

77. CNC knew the other drivers, like Paredes and Perales, who performed work driving to and from drill sites, were not in the group of drivers who drove across state lines.

78. CNC nonetheless failed to pay proper overtime to certain employees, such as Paredes and Perales.

79. These employees performed work that is primarily manual labor in nature.

80. Under the FLSA, the work performed by these employees is non-exempt manual labor.

81. Paredes, Perales, and the Putative Class Members were not allowed to vary from the job duties that were predetermined for them.

82. Truly, these workers have little or no discretion in how to do their job, or the jobs of others they work with.

83. Even though Paredes, Perales, and the Putative Class Members perform very routine, technical, and manual labor job duties, CNC uniformly failed to pay proper, or any, overtime to these workers.

84. CNC knew, or showed reckless disregard for whether, its policy of not calculating and paying overtime at the full, regular hourly rate violated the FLSA.

85. CNC's failure to pay overtime to these workers was, and is, a willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS FOR DRIVER CLASS

86. Paredes and Perales incorporate all other allegations.

87. The illegal pay practices CNC imposed on Paredes and Perales were likewise imposed on the Driver Class Members.

88. CNC employs many other hourly workers who worked over 40 hours per week and were subject to CNC's same pattern, practice, and policy of failing to pay overtime at 1.5x the workers' regular rates of pay.

89. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

90. Based on their experience and tenure with CNC, Paredes and Perales are both aware that CNC's illegal practices were imposed on the Driver Class Members.

91. These workers were similarly situated within the meaning of the FLSA.

92. CNC's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Driver Class Members.

## COLLECTIVE ACTION ALLEGATIONS FOR STRAIGHT TIME CLASS

93. CNC's illegal "straight time for overtime" policy extends well beyond Perales.

94. It is the "straight time for overtime" payment plan that is the "policy that is alleged to violate the FLSA" in this FLSA collective action. *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *see also, e.g., Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (certifying "straight time for overtime" claim for collective treatment).

95.     CNC has paid other hourly workers according to the same unlawful scheme.

96.     Any differences in job duties do not detract from the fact that these hourly workers were entitled to overtime pay.

97.     The workers impacted by CNC's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CAUSE OF ACTION–OVERTIME VIOLATIONS OF THE FLSA

98.     Paredes and Perales incorporate all other allegations.

99.     By failing to pay Paredes and the Putative Class Members overtime at 1.5 times their regular rates, CNC violated the FLSA. 29 U.S.C. § 207(a).

100.    CNC owes Paredes, Perales, and the Putative Class Members the difference between the rate actually paid and the proper overtime rate.

101.    Because CNC knew, or showed reckless disregard for whether, its pay practices violated the FLSA, CNC owes these wages for at least the past three years.

102.    CNC also owes Paredes, Perales, and the Putative Class Members an amount equal to the unpaid overtime wages as liquidated damages.

103.    Paredes, Perales, and the Putative Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## RELIEF SOUGHT

104.    Wherefore, Paredes and Perales pray for judgment against CNC as follows:

    (a)     For an order certifying this case as a collective action for the purposes of the FLSA claims;

    (b)     For an order finding CNC liable for violations of state and federal wage laws with respect to Paredes, Perales, and all Putative Class Members covered by this case;

(c) For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Paredes, Perales, and all Putative Class Members covered by this case;

(d) For a judgment awarding Paredes, Perales, and all Putative Class Members covered by this case their costs of this action;

(e) For a judgment awarding Paredes, Perales, and all Putative Class Members covered by this case their attorneys' fees;

(f) For a judgment awarding Paredes, Perales, and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(g) For all such other and further relief as may be necessary and appropriate.

Date: May 29, 2020

Respectfully submitted,

By: */s/ Matthew S. Parmet*
**Matthew S. Parmet**
Texas Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, Texas 77056
phone 713 999 5228
fax 713 999 1187
matt@parmet.law

**Attorneys for Plaintiff**

DocuSign Envelope ID: E89B3F47-14F5-495F-9DFF-07F28C64D24B

# CONSENT TO JOIN WAGE CLAIM

Print Name: Norberto Paredes

1. I hereby consent join the collective action lawsuit filed against **CNC Oilfield Services** and any of its related companies, agents, contractors, representatives, owners, or other related persons to pursue my claims of unpaid overtime during the time that I worked with them.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act and applicable federal and state law.

3. I consent to be bound by the Court's decisions.

4. I designate the law firm PARMET PC as my attorneys to prosecute my wage claims.

5. If needed, I authorize my attorneys to use this consent to re-file my claim in a separate lawsuit or arbitration against the company.

DocuSigned by:
*Norberto Paredes*
Signature — E98913205CF4FE...

4/1/2020
Date

**Exhibit A**

DocuSign Envelope ID: 5E190B55-94B6-40EB-A1BE-7447A3AC78F1

## CONSENT TO JOIN WAGE CLAIM

Print Name: Daniel Perales

1. I hereby consent join the collective action lawsuit filed against **CNC Oilfield Services** and any of its related companies, agents, contractors, representatives, owners, or other related persons to pursue my claims of unpaid overtime during the time that I worked with them.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act and applicable federal and state law.

3. I consent to be bound by the Court's decisions.

4. I designate the law firm PARMET PC as my attorneys to prosecute my wage claims.

5. If needed, I authorize my attorneys to use this consent to re-file my claim in a separate lawsuit or arbitration against the company.

_____  4/3/2020
Signature                   Date

**Exhibit B**